**LAITRAM CORPORATION and Intralox, Inc., Plaintiffs–Appellants,**

v.

**MOREHOUSE INDUSTRIES, INC. (now Summa Corporation), KVP Acquisition Corp. and KVP Systems, Inc., Defendants Cross–Appellants.**

Nos. 97–1422, 97–1582.

United States Court of Appeals, Federal Circuit.

May 5, 1998.

D. David Hill, McAndrews, Held & Malloy, LTD, Chicago, IL, argued for plaintiffs-appellants. With him on the brief were Timothy J. Malloy, Sharon A. Hwang, and Richard T. McCaulley, Jr. Also on the brief was Sharon K. Sandeen, Hunter, Richey, Di Benedetto & Brewer, Sacramento, CA. Of counsel was Gregory J. Volger, McAndrews, Held & Malloy, LTD.

Samuel D. Delich, Flynn, Delich & Wise, San Francisco, CA, argued for defendants cross-appellants. With him on the brief was R. Michael West, Lothrop & West, Sacramento, CA.

Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

The Laitram Corporation and Intralox, Inc. (collectively "Laitram") appeal from the decision of the United States District Court for the Eastern District of California granting summary judgment of noninfringement of certain claims of two of Laitram's patents. *Laitram Corp. v. Morehouse Indus., Inc.*, No. S–94–0452 WBS/GGH (E.D.Cal. Apr. 23, 1997). The Summa Corporation, the KVP Acquisition Corporation, and KVP Systems, Inc. (collectively "KVP") cross-appeal from the court's grant of summary judgment that those claims were not invalid. *See id.* Because neither the court's claim construction nor its noninfringement determination was in error, and because the court did not err in concluding that KVP could not meet its burden of proving invalidity by clear and convincing evidence, we affirm.

## BACKGROUND

U.S. Patents B1 4,934,518 and B1 4,886,158 issued from continuations of the same parent application and pertain generally to a plastic "module" (10) connectable to other like modules to form a conveyor belt. As described in the specifications of the two patents, which share a common written description, the center of each module contains several "sprocket recesses" (50) which mate with "sprockets" (*i.e.*, teeth) (52) of a "sprocket wheel" (54) during operation of the conveyor belt. The disclosed sprocket recesses are trapezoidally-shaped and are designed to mate with trapezoidally-shaped sprockets. The angled edges of the sprocket recesses are referred to in the written description as "transverse sections" (32 and 34) and the areas of engagement between the sprockets and the transverse sections are referred to as the "driving surfaces." These various elements are shown in Figures 1, 3, and 7, which respectively show a single module, a cross-section of a single sprocket recess, and a conveyor belt comprising several interconnected modules:

FIG. 1

FIG. 3

**FIG. 7**

Laitram sued KVP, alleging that two of its products, the "All–In–One" module and the "Fluid Flo" module, infringe claims 1, 5, 7, 49, and 100 of its '518 patent and claim 10 of its '158 patent.[1] Pictures of the accused modules are shown below:

The parties do not dispute that the driving surfaces of the accused modules are curved, and that the "All–In–One" module contains a single transverse section forming a single driving surface.

All of the disputed limitations of the asserted claims are similar to each other, differing in ways immaterial to this appeal. The limitations of claim 1 of the '518 patent are representative; that claim reads as follows:

> "at least two transverse elements ... defining at least two sprocket recesses ...

capable of receiving cooperative sprocket teeth" [the "sprocket recess" limitation]. each transverse element having a "driving surface within said sprocket recesses and at least a portion of each of said driving surfaces extending downwardly ... and in the direction of intended travel" [the "driving surface" limitation].

KVP moved for summary judgment of noninfringement and invalidity in the district court. The district court examined the claim language, the written description, and the

1. In the district court, Laitram also asserted that KVP infringed claim 2 of the '518 patent and

claim 1 of the '158 patent, but does not appeal the judgment of noninfringement of those claims.

prosecution history [2] in arriving at an interpretation of these limitations; the most pertinent aspects of the court's analysis are summarized here. In order to determine if the "driving surface" limitation reads on the curved driving surfaces of the accused devices, the court noted that the written description disclosed only flat (*i.e.*, planar) surfaces. Moreover, the court observed that during prosecution, the applicant attempted to distinguish his invention over the prior art by arguing that the combination of the Kewley '763 and Palmaer '831 patents did not render his invention obvious because:

> the cylindrically shaped wall of the drive link of the chain of Palmaer ... does not and could not provide the module of the instant invention having an intermediate section composed of at least one transverse member and longitudinal members intersecting the transverse member that define at least one sprocket recess, where the [sic] at least one transverse element has a driving surface within the sprocket recess that extends downwardly toward the bottom surface and in the direction of travel.

(emphasis added).[3] Accordingly, the court concluded that the applicant "distinguished a cylindrically shaped driving surface from one that 'extends downwardly toward the bottom surface in the direction of travel,' " slip op. at A19, and that the "driving surface" limitation was accordingly limited to "angled, planar" driving surfaces, *id.* at A21.

The district court construed the "sprocket recess" limitation as requiring "*opposing* transverse elements, each of which contains a driving surface capable of mating with the corresponding side of a single sprocket tooth." *Id.* at A26 (emphasis added). The court again turned to the written description and noted that the only disclosed embodiment showed sprocket recesses bound by two opposing transverse elements. *See, e.g.*, Figure 3 *supra*. The court also observed that the benefits of having opposing transverse elements were noted in the written description as allowing bi-directional movement: "[t]he sprocket recesses 50 are in line and can be driven in either direction. The associated sprocket teeth are also symmetrical and in line such that the sprocket wheel can be driven in either direction and installed either way on a driving shaft." '158 patent, col. 4, ll. 38–42.

The court also found support for its interpretation of the "sprocket recess" limitation in the prosecution history. First, the court observed that the applicant had described the "essence" of his invention as "the provision of sprocket recesses ... having angularly disposed *sides* adapted to mate with corresponding sprocket teeth without scrubbing." [4] (emphasis added). Second, the court noted that the applicant had distinguished his invention over Lapeyre '527, which disclosed only a single transverse element, by noting that "the Lapeyre '527 patent ... does not disclose or suggest the presently claimed invention and does not even teach the use of sprocket recesses in conveyor modules." Third, the court noted that the applicant represented that his invention required that a given sprocket tooth during operation of the belt contacted both the front and back of the recess, and therefore by necessary implication that the recess necessarily included

2. We refer to the "prosecution history" without reference to the patent to which it pertains, *viz.*, the '518 or the '158 patent. *See Jonsson v. Stanley Works*, 903 F.2d 812, 818, 14 USPQ2d 1863, 1870 (Fed.Cir.1990) (when two patents using the same claim term both stem from the same parent patent application, the prosecution histories of both are relevant to an understanding of the term in both patents).

3. The court also noted that the applicant made several statements relevant to the construction of the phrase "angularly disposed," the precursor to the "extending downwardly ... in the direction of intended travel" language of the claims. *See* slip op. at A18 (noting that the "extending downwardly" language was added after the claim language "angularly disposed" was rejected under § 112 as indefinite). However, because these statements were made with reference to language different from (albeit related to) the claim language on appeal, they are not a particularly relevant basis for reviewing the claim construction reached by the district court. We accordingly do not rely on statements made during prosecution that are relevant only to the "angularly disposed" claim language in arriving at our construction of "extending downwardly ... in the direction of intended travel," and do not address the arguments of the parties that rely on these statements.

4. "Scrubbing" refers to rubbing between the sprocket teeth and the driving surfaces. *See* '158 patent, col. 1, ll. 48–50.

opposing transverse elements. Specifically, when arguing that his claims were not anticipated by Kewley '763, the applicant noted that "[a]ny attempt to drive a conveyor belt built according to the Kewley [p]atent by a sprocket tooth *simultaneously contacting both interior parallel surfaces* would clearly be technically unfeasible and would render the belt substantially inoperative." (emphasis added).

Finally, the court considered Laitram's argument that the doctrine of claim differentiation warranted an interpretation of the "sprocket recess" limitation that encompassed a single transverse element because claim 2 of the '518 patent explicitly required opposing transverse elements. The court disagreed, noting that "claim differentiation is a guide, not a rigid rule," and that, because the "sprocket recess" limitation bore "only one interpretation, similarity [between the claims] will have to be tolerated." Slip op. at A22 (citations and internal quotations omitted).

Working from this claim construction, the court concluded that neither of the accused devices literally infringed the asserted claims, and granted KVP's motion for summary judgment of noninfringement. Specifically, the court determined that neither the "All–In–One" module nor the "Fluid Flo" module infringed the claims because each had curved driving surfaces and accordingly did not meet the "driving surface" limitation. Additionally, the court determined that the "All–In–One" module had only a single transverse element and accordingly did not meet the "sprocket recess" limitation. The court further concluded that prosecution history estoppel precluded infringement under the doctrine of equivalents.

The court granted Laitram's motion for summary judgment that the claims of its patents were not invalid,[5] concluding that, even if the evidence were construed "in the light most favorable to KVP, [KVP] cannot show by clear and convincing evidence that the" asserted claims were invalid. Slip op. at A33.

Laitram appeals the district court's grant of KVP's summary judgment motion for noninfringement, arguing that the court's claim construction was erroneous and that the existence of genuinely disputed fact issues precluded summary judgment of noninfringement under the doctrine of equivalents. KVP cross-appeals the district court's grant of Laitram's summary judgment motion that the asserted claims are not invalid. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. Standard of Review

Literal infringement involves a two-step determination: the proper construction of the asserted claim and a determination whether the claim as properly construed reads on the accused product or method. Claim construction is a question of law, which we review *de novo. Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (in banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996); *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448 (Fed.Cir.1998) (in banc). When construing a claim, a court principally consults the evidence intrinsic to the patent, namely, the claims themselves, the written description portion of the specification, and the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582–83, 39 USPQ2d 1573, 1576–77 (Fed.Cir.1996).

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Because the parties did not dispute the structure of the accused devices at the district court, or whether there is or is not infringement by those devices once the issue of claim construction is settled, KVP's summary judgment motion for noninfringement did not implicate any issues of fact. *See Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1278, 35 USPQ2d 1035, 1041 (Fed.Cir.1995). Instead, resolution of the motion turned solely on the legal question of the proper con-

---

5. The district court judge did not expressly order that Laitram's motion be granted, but his conclusion on this point is clear from the text of his opinion and from the subsequent entry of judgment based upon that opinion, which dismissed all of the claims in the case.

struction of the claims. *See Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530, 36 USPQ2d 1667, 1669 (Fed.Cir.1995) ("Claim interpretation is a question of law amenable to summary judgment."). We now review this legal question.

## B. *Infringement*

### 1. *The "Driving Surface" Limitation*

■ Laitram argues that the district court erred by construing the phrase "each of said driving surfaces extending downwardly . . . and in the direction of intended travel" to include only "angled, planar" driving surfaces. Instead, Laitram argues that this phrase should be construed to include curved driving surfaces like those of the accused devices. In support of its interpretation, and by way of attacking the district court's interpretation, Laitram asserts the following: (1) the court's interpretation erroneously reads the limitations of the disclosed embodiments into the claims, which are not expressly limited to planar driving surfaces; (2) the applicant's statement during prosecution that "the cylindrically shaped wall of the drive link of the chain of Palmaer . . . does not and could not provide the module of the instant invention having . . . a driving surface . . . that extends downwardly toward the bottom surface and in the direction of travel" should not have been relied upon by the district court because this statement was not relied upon by the examiner in allowing the claims and thus was of no consequence to patentability; (3) because Palmaer was cited during the prosecution of the '158 patent, the claims must necessarily encompass curved surfaces; (4) KVP, when requesting reexamination of the '158 patent, "admitted" that the claims encompassed curved surfaces; and (5) the doctrine of claim differentiation supports its construction because claim 85 of the '518 patent is expressly limited to planar driving surfaces.

■ None of Laitram's arguments is persuasive, and we address each in turn before construing the "driving surface" limitation. First, we do not agree that the court's observation that the patents' written description discloses only flat driving surfaces erroneously reads that structure into the claims. Rather, the court's observation was merely a starting point for construing the disputed

language "extending downwardly . . . in the direction of intended travel." It is entirely proper to "use the specification in order to determine what the inventor meant by terms and phrases in the claims." *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1566, 24 USPQ2d 1321, 1327 (Fed.Cir.1992).

■ Laitram's second argument, that applicant's statement which attempted to distinguish his invention over prior art disclosing curved driving surfaces was not relied upon by the examiner and is therefore irrelevant to claim construction, is not sustainable under our case law. "Regardless of the examiner's motives, arguments made during prosecution shed light on what the applicant meant by its various terms." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1438, 7 USPQ2d 1129, 1136 (Fed.Cir.1988). The fact that an examiner placed *no reliance* on an applicant's statement distinguishing prior art does not mean that the statement is inconsequential for purposes of claim construction. *See id.*, 849 F.2d 1430, 7 USPQ2d at 1136.

Laitram's third argument, that the fact that Palmaer was cited as prior art during the prosecution of the '158 patent mandates the conclusion that curved driving surfaces are within the claims, is unavailing. When this snap-shot of the ·prosecution history is scrutinized in context, it becomes clear that nothing transpired which is helpful in construing the disputed claim language. When Palmaer was cited as a ground for rejection of the claims, the examiner suggested to the applicant that his claims would be allowed if they were limited to multiple driving surfaces across the width of the module, a feature not taught by Palmaer. The applicant acted on this suggestion and his claims were allowed. Thus, the only conclusion that can be drawn from this portion of the prosecution history is that the claims are limited to modules having multiple recesses, a conclusion irrelevant to the claim construction issue on appeal.[6]

■ Laitram's fourth argument, that KVP "admitted" during reexamination that ·the claims were broad enough to encompass curved driving surfaces, is irrelevant to the construction of the claims. It is the *applicant's* representations during prosecution

---

**6.** Laitram makes a similar argument with respect to the prosecution history of the reexamination

of the '518 patent. That argument is similarly unavailing.

that potentially shed light on the construction of the claims, *see, e.g., Vitronics,* 90 F.3d at 1582, not the representations of a reexamination requester.

■ Laitram's fifth and final argument, that claim differentiation warrants the conclusion that the asserted claims are not (unlike claim 85 of the '518 patent) limited to flat driving surfaces, is not persuasive. As the district court properly noted, although different claims should be presumed to cover different inventions, "if a claim will bear only one interpretation, similarity [with another claim] will have to be tolerated." *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1538, 19 USPQ2d 1367, 1371 (Fed.Cir.1991) (quoting *Autogiro Co. of Am. v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 404, 155 USPQ 697, 708 (1967)).

Here, the asserted claims will bear only one interpretation: that the "driving surface" limitation is limited to flat driving surfaces. While claims are not necessarily limited by the written description, it is relevant that nothing in the written description suggests that the driving surfaces can be anything but flat. Indeed, the benefits of having flat driving surfaces are stated in the "Summary of the Invention" portion of the written description.[7] These observations warrant a conclusion that the "driving surface" limitation, "extending downwardly ... and in the direction of intended travel," requires flat driving surfaces. *See North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1576–77, 28 USPQ2d 1333, 1337 (Fed.Cir.1993) (noting that the written description requirement of 35 U.S.C. § 112, ¶ 1, warranted a claim construction that encompassed only the disclosed embodiments).

The prosecution history confirms this conclusion. That history makes clear that the applicant distinguished the cylindrical walls of Palmaer from his invention because it did not disclose a "driving surface within the sprocket recess that extends downwardly toward the bottom surface and in the direction of travel." Accordingly, this limitation cannot be construed to cover the cylindrically shaped driving surfaces of the accused devices. *See Advance Transformer Co. v. Levinson,* 837 F.2d 1081, 1083, 5 USPQ2d 1600, 1602 (Fed.Cir.1988) (a patentee's statements to the PTO distinguishing his pending application's invention from that of another person's issued patent may be relied on for purposes of construing the patentee's claims). The district court's interpretation of the "driving surface" limitation was not erroneous, and it did not err in granting summary judgment that the accused devices did not literally infringe the asserted claims.

### 2. *The "Sprocket Recess" Limitation*

■ Laitram argues that the district court erred in construing the "sprocket recess" limitation to require *"opposing* transverse elements." Instead, Laitram asserts that only a single transverse element is required. According to Laitram's proposed interpretation, a single recess of the claims is minimally defined by only one transverse element and two longitudinal members such that the recess is not enclosed. Laitram explains that the reason the claims require multiple transverse elements is because the claimed module requires multiple sprocket recesses across the width of the module, each requiring a single transverse element. According to its interpretation, the multiple transverse elements of the claims are portions of an otherwise single bar that spans the entire length of the module.

We have considered Laitram's arguments in support of its claim construction,[8] but we

---

7. "The intermediate section also includes angled surfaces which define sprocket recesses.... These intermediate sprocket recesses provide the benefit of minimizing chordal action and scrubbing between the mating surface of the module and the sprocket." '158 patent, col. 1, l. 67 to col. 2, l. 6. "The angled surfaces ... of the intermediate section also serve to present greater surface area to water and/or steam jets which can be located above and below the modules for cleaning of the belt. The angled sections also facilitate visual inspection of the belt." *Id.,* col. 3, l. 67 to col. 4, l. 3.

8. Laitram argues that (1) the court's construction erroneously limits the claims to bi-directional movement despite the express requirement in the claims that movement be in "at least one direction of intended travel"; (2) neither the "mating" or "receiving" limitation of the claims requires opposing transverse elements; and (3) claim differentiation supports its construction because claim 2 of the '518 patent is expressly limited to opposing transverse elements.

are not persuaded. Instead, we agree with the district court's analysis and its conclusion that the "sprocket recess" limitation requires two opposing transverse elements capable of mating with a corresponding sprocket tooth. In further support of this conclusion, the claims require at least two transverse elements to define the sprocket recesses. The written description makes clear that these "transverse elements" are the "transverse sections" 32 and 34, which span the entire width of the module and, in an opposing fashion, span several recesses. For example, the written description clearly discloses that the recesses are "provided by" the transverse sections 32 and 34 and the longitudinal members 30 that intersect them. *See* '158 patent, col. 3, ll. 37–38. In contrast, there is nothing in the written description that supports Laitram's assertion that a given transverse element of the claims should be construed to span only a single recess.

Because the "All–In–One" module has a single transverse element, it does not contain "sprocket recesses" defined by opposing transverse elements and therefore does not literally infringe the asserted claims for this additional reason.

### 3. Doctrine of Equivalents

■ We also agree with the district court that summary judgment of noninfringement under the doctrine of equivalents was proper in this case. Although Laitram correctly notes that infringement under the doctrine of equivalents is a question of fact, *see Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097, 85 USPQ 328, 331 (1950), and asserts that material facts remain in dispute concerning the operation of the accused devices, Laitram is nonetheless precluded from successfully asserting that either of the accused devices infringes under the doctrine.

First, as to the "driving surface" limitation, the applicant's unequivocal statement in the prosecution history that distinguished his invention from those structures disclosing cylindrical surfaces now precludes Laitram from asserting that the curved driving surfaces of the accused devices, which the rec-

ord clearly shows are only trivial variants of the distinguished art, infringe under the doctrine of equivalents. *See Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174, 26 USPQ2d 1018, 1025 (Fed.Cir.1993) ("Unmistakable assertions made by the applicant to the Patent and Trademark Office (PTO) in support of patentability, whether or not required to secure allowance of the claim ... may operate to preclude the patentee from asserting equivalency between a limitation of the claim and a substituted structure or process step."); *id.* at 1173, 988 F.2d 1165, 26 USPQ2d at 1024 (noting that whether a patentee's equivalency theory is precluded by the assertions made by an applicant during prosecution is a question of law); *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1462 (Fed.Cir.1998) (noting that prosecution history estoppel precludes a patentee from asserting as an equivalent a "trivial variation" of the prior art over which the invention was distinguished).

■ Second, Laitram cannot successfully argue that the single bar of the "All–In–One" module is equivalent to the "sprocket recess" limitation. Using a single bar rather than opposing transverse elements creates a module that produces a different result, *i.e.*, a module capable of moving in only one direction rather than two. No reasonable fact finder could conclude that such a difference is an insubstantial difference. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, —— n. 8, 117 S.Ct. 1040, 1053 n. 8, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 n. 8 (1997) ("Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant ... summary judgment.").

## C. Invalidity

We have additionally reviewed the nine pages of KVP's opening brief in which it sets forth nine separate grounds for invalidity of the asserted claims.[9] We conclude that the district court did not err in holding that KVP could not prove invalidity by clear and convincing evidence, and accordingly Laitram

---

9. Specifically, KVP alleges that four different claim limitations are objectionable as "new matter" under § 112, that KVP's sales of "fused" modules in the mid 1970s invalidates the asserted claims under the "on sale" bar, and that four prior art patents anticipate the asserted claims.

was entitled to summary judgment on this issue. *See Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115, 31 USPQ2d 1132, 1134 (Fed.Cir.1994) ("Under 35 U.S.C. § 282, a patent is presumed valid and one challenging its validity bears the burden of proving invalidity by clear and convincing evidence.").

## CONCLUSION

Having considered all of the parties' arguments, we conclude that the district court's claim construction was not in error and that it correctly concluded that the accused devices did not literally infringe the asserted claims. The court did not err in concluding that Laitram's doctrine of equivalents theory is precluded as a matter of law. Finally, we agree with the district court that KVP could not carry its burden of proving invalidity of the asserted claims by clear and convincing evidence and that Laitram was entitled to summary judgment on this issue. The decision of the court is therefore

*AFFIRMED.*