NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1329

REVOLUTION EYEWEAR, INC.,

Plaintiff/Counterclaim Defendant-
Appellant,

and

GARY MARTIN ZELMAN,

Counterclaim Defendant,

v.

ASPEX EYEWEAR, INC. and NONU IFERGAN,

Defendants/Counterclaimants-
Appellees.

DECIDED:  March 30, 2006

Before NEWMAN, SCHALL, and GAJARSA, Circuit Judges.

SCHALL, Circuit Judge.

DECISION

Revolution Eyewear, Inc. ("Revolution") sued Aspex Eyewear, Inc. ("Aspex") in the United States District Court for the Central District of California for infringement of U.S. Patent No. 6,550,913 B2 ("the '913 patent"). On March 8, 2005, the district court granted summary judgment in favor of Aspex, after interpreting the relevant claim limitations and determining that claims 1-6 of the '913 patent were invalid by reason of anticipation. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 03-5965, slip op. (C.D. Cal. Mar. 8, 2005) ("Summary Judgment Decision"). Revolution now appeals the district court's decision. For the reasons set forth below, we vacate the grant of summary judgment and remand the case to the district court for further proceedings.

DISCUSSION

I.

The claims of the '913 patent relate to auxiliary eyeglasses, also known as clip-on glasses. Claim 1 is an independent claim directed to a method of attaching auxiliary eyeglasses to conventional eyeglasses, also known as primary eyeglasses. It reads as follows:

> A method of attaching auxiliary eyeglasses to conventional eyeglasses comprising;
> [1] forming sockets on temple extensions on either side of said conventional eyeglasses;
> [2] mounting magnets in said sockets on said conventional eyeglass temple extensions;
> [3] forming appendages extending from either side of said auxiliary eyeglasses constructed and arranged to fit below said temple extensions of said conventional eyeglasses;
> [4] forming sockets on said appendages on said auxiliary eyeglasses;
> [5] mounting magnets in said sockets on said auxiliary eyeglass appendages;
> [6] orienting said magnets in said sockets on said conventional eyeglass temple extensions and said magnets in said sockets on said auxiliary

eyeglass appendages with the maximum magnetic attractive force approximately parallel to the plane of lenses in said conventional eyeglasses when said auxiliary eyeglasses are mounted on said conventional eyeglasses;

[7] positioning said appendages on said auxiliary eyeglasses below said extensions on said conventional eyeglasses so said magnets in said appendages mate with said magnets on said conventional eyeglass extensions;

[8] whereby said auxiliary eyeglasses are prevented from moving downward and being becoming detached when mounted on said conventional eyeglasses by a maximum attractive force between said magnets on said auxiliary eyeglasses and said conventional eyeglasses.

'913 patent, claim 1.  Claim 2 depends from claim 1, while claim 3 depends from claim

2.  '913 patent, claims 2 & 3.  Claim 4 is an independent claim directed to the apparatus.

It reads as follows:

Apparatus for attaching auxiliary eyeglasses to conventional eyeglasses comprising;

[1] temple extensions attached to either side of a frame of said conventional eyeglasses for attaching hinged temple pieces;

[2] a socket attached to each of said temple extensions;

[3] a magnet mounted in each of said sockets;

[4] an appendage attached to each side of said auxiliary eyeglasses;

[5] a socket attached to each of said appendages;

[6] a magnet mounted in each of said sockets;

[7] said appendages constructed and arranged to fit below said temple extensions on said conventional eyeglasses with said magnets in said sockets on said appendages mating with said magnets in said sockets on said extension of said conventional eyeglass frame;

[8] said magnets on said auxiliary eyeglasses and said magnets on said conventional eyeglasses being oriented with their maximum magnetic attractive force parallel to lenses in said conventional eyeglasses;

[9] whereby said magnets on said auxiliary eyeglasses when mated with said magnets on conventional eyeglasses provide maximum resistance to downward movement of said auxiliary eyeglasses thereby preventing accidental detachment of said auxiliary eyeglasses from said conventional eyeglasses.

'913 patent, claim 4.  Claim 5 depends from claim 4, while claim 6 depends from claim

5.  '913 patent, claims 5 & 6.

The Abstract of the '913 patent explains that, in the invention, the auxiliary eyeglasses fit beneath conventional eyeglasses "solely by the magnetic attractive force." '913 patent, abstract. It explains that, in a modification of the preferred embodiment, a clip on the auxiliary eyeglasses can be fitted over the bridge of conventional eyeglasses or clips on the auxiliary eyeglasses can be fitted over a conventional frame. Id. The Background of the '913 patent explains that one object of the invention in the '913 patent is to provide an improved method for attaching auxiliary lenses "without any need for additional support." '913 patent, col. 2, ll. 22-25. It notes, though, that additional supporting clips may be used. '913 patent, col. 2, ll. 40-47. The Brief Description of the Invention likewise explains that the invention can hold the auxiliary eyeglasses on conventional eyeglasses "without the need for any additional support." '913 patent, col. 3, ll. 10-16. The preferred embodiment of the '913 patent shows magnets mounted on the appendages of the auxiliary eyeglasses that fit beneath and attach to the magnets mounted on the temple extensions of conventional eyeglasses. '913 patent, fig. 1. In the "optional but less preferred embodiment" in Figure 4, the '913 patent explains that a clip constructed to extend over and mount on a conventional eyeglass bridge "will provide additional support for auxiliary eyeglasses 10' for use in extremely strenuous activity." '913 patent, col. 6, ll. 55-65 & fig. 4. In Figure 7, another "optional but less preferred embodiment," magnets in the bridge of the auxiliary eyeglass lenses attach to magnets in the bridge of conventional eyeglasses, and the auxiliary eyeglasses have clips that fit over the eyeglasses of the conventional eyeglasses. '913 patent, col. 6, ll. 5-17 & fig. 7.

II.

On November 2, 1998, inventor Gary Zelman filed Patent Application No. 184,694 ("the '694 application"), which eventually issued as the '913 patent. During prosecution of the '913 patent, Mr. Zelman elaborated on what the '913 patent claimed. He repeatedly distinguished his invention over the prior art, including U.S. Patent No. 5,568,207 (the "Chao patent"). The Chao patent is directed to magnetic clip-on eyewear where the sole arm of the auxiliary eyeglasses has a magnet and is constructed to sit on top of a conventional frame's arm. Chao patent, abstract, figs. 1-6. The Chao patent explains that the prior art eyeglasses have "no supporting members for preventing the auxiliary lenses from moving downward," but in the Chao patent the arms of the auxiliary eyeglasses act as both a top support member and a magnetic force member. Chao patent, col. 1, ll. 10 to col. 2, l. 10.

III.

On August 21, 2003, Revolution sued Aspex in the Central District of California for infringement of the '913 patent. On January 31, 2005, Aspex moved for partial summary judgment that claims 1-6 of the '913 patent were invalid as anticipated under 35 U.S.C. § 102(a) as "known or used by others" and § 102(b) as "on sale" based on prior art Takumi 970 Series frames (the "Takumi frames"). In the Takumi frames, which allegedly were displayed and sold in 1997 by Manhattan Design Studio, Inc. ("MDS"), (1) the conventional eyeglasses had a magnet pointing down and (2) the lower arms of the auxiliary eyeglasses included a magnet pointing up, while the upper arms did not include a magnet.

On March 8, 2005, the district court granted Aspex's summary judgment motion for invalidity without a hearing. Summary Judgment Decision, slip op. at 1. Before considering the issue of anticipation, the court first interpreted the claim language. Id., slip op. at 13. Revolution urged that the claims of the '913 patent were limited to eyewear in which the arms of the auxiliary frame attach to the primary frame only from below with no other means of attachment. The court rejected Revolution's claim construction. The court held that the language of claims 1-6 was not ambiguous, as "it does not require that the auxiliary eyeglass[] frames be held in place solely by bottom-mounted magnets and by 'no other means of mechanical attachment.'" Id., slip op. at 14. The court then pointed to the specification, which states that the invention is not to be limited by the drawings or written description—demonstrating that there is nothing in the specification to limit the claims. Id., slip op. at 16. The court also referred to the less preferred embodiments, which use clips to bolster support, and stated that "[i]f the claims precluded additional means of support, these embodiments would be outside the limitations in the claims." Id.

The court held that the prosecution history did not limit the invention in the '913 patent to auxiliary eyeglasses that are attached solely by bottom-mounted magnets. Id., slip op. at 16. "All the evidence in the prosecution record relied on by [Revolution] distinguishes [Revolution's] invention from one in which the magnets are mounted on top of the arms of the primary frames. None of the evidence distinguishes [Revolution's] invention from another bottom-mounted configuration that contains additional supportive elements." Id. The court pointed out that the claims that would have supported Revolution's position—ones where the auxiliary eyeglasses were held

in position and prevented from being displaced downwardly "solely by the attractive magnetic forces of the downwardly and upwardly oriented magnets"—were cancelled during prosecution. Id.

After construing the claims, the court focused on the issue of anticipation. The court considered (1) the declaration of Aspex's expert, David Yinkai Chao, the Director of International Sales at Contour Optik Inc., an eyeglasses design, manufacturing, and sales company, who said the '913 patent was anticipated; and (2) the declaration of Revolution's expert, Julie Madison, a former MDS sales agent. Id., slip op. at 17. Ms. Madison stated that the upper appendages on the auxiliary eyeglasses on the prior art Takumi frames were functional and essential, thereby rendering the Takumi frames different from the auxiliary eyeglasses claimed in the '913 patent and making them non-anticipating. Id. The court concluded that "a triable issue of fact [was] not raised" because Ms. Madison's declaration did not contradict Mr. Chao's declaration: "It does not negate the conclusion that all the elements of claims one through six of the '913 patent are present in the Takumi 970 eyewear; it only says, in effect, that the Takumi 970 eyewear possesses elements additional to those contained in claims one through six." Id.

Revolution timely appealed the district court's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

IV.

This court reviews a district court's grant of summary judgment de novo. TorPharm Inc. v. Ranbaxy Pharms., Inc., 336 F.3d 1322, 1326 (Fed. Cir. 2003). "When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be

credited, and all justifiable inferences are to be drawn in the nonmovant's favor." Caterpillar Inc. v. Deere & Co., 224 F.3d 1374, 1379 (Fed. Cir. 2000). "Where the evidence is conflicting or credibility determinations are required, the judgment should be vacated rather than reversed, and the case should be remanded for further proceedings." Jones v. Hardy, 727 F.2d 1524, 1531 (Fed. Cir. 1984).

A patent claim is invalid as anticipated if every limitation in a claim is found in a single prior art reference, either explicitly or inherently. See MEHL/Biophile Int'l Corp. v. Milgraum, 192 F.3d 1362, 1365 (Fed. Cir. 1999). The first step of an anticipation analysis is claim construction; the second step in the analysis involves a comparison of the construed claim to the prior art. Helifix, Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1346 (Fed. Cir. 2000).

V.

On appeal, Revolution argues that the district court erred in ruling that the Takumi frames anticipate claims 1-6 of the '913 patent because the court failed to correctly construe the claims in view of the prosecution history. It asserts "[t]he prosecution history leads to an inescapable conclusion that the claims of the '913 patent are limited to eyewear in which the magnets of the auxiliary appendages fit below the magnets of the conventional eyeglasses and the attraction between the magnets is the only source of support holding the two frames together." (Emphasis in original). Based on the prosecution history, Revolution asserts that the claims "must be limited to eyewear where the auxiliary frame's magnets engage only from the bottom of the conventional frame and where the two frames are held together by no additional top attachment". (Emphasis in original). It argues that the district court erred in ruling that

the language relating to a preferred embodiment immediately preceding the claim language precludes Revolution's proposed construction because the disclaimer in the prosecution history is clear. According to Revolution, the less preferred clip-on embodiments depicted in Figures 5-9 of the specification were disavowed during the prosecution history. Revolution concludes that the Takumi frames do not anticipate the '913 patent because the "auxiliary frame in Takumi contains top support arms in addition to magnets," while the '913 patent is limited to bottom-only attraction eyeglasses.

Aspex responds that the district court properly construed the claims and, even if it did not, the claims are still invalid. First, Aspex argues the district court properly construed the claims to not include an additional limitation requiring that magnets provide the "sole means of support" for the auxiliary eyeglasses. According to Aspex, this is because (1) the plain language of the claims controls; (2) it is improper to re-write claims; (3) the district court properly considered the prosecution history; and (4) if Revolution is correct, the patent may be invalid under 35 U.S.C. § 112.

VI.

We agree with Revolution that the district court erred in construing the claims of the '913 patent. While the court was correct that the ordinary meaning of the claim language and the specification do not limit the scope of the invention to devices without any help from other supporting members, during prosecution Mr. Zelman clearly disclaimed the use of other supporting members.

"[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during

prosecution in order to obtain claim allowance." Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985). For prosecution disclaimer to arise, "the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable." Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1326 (Fed. Cir. 2003).

In this case, Mr. Zelman repeatedly distinguished the invention in the '913 patent from the prior art on two grounds. First, he distinguished the prior art because in his invention the magnets were bottom-mounted. He stated that "[f]or the first time an auxiliary eyeglass frame having bottom mounted magnets with the minimum requirements was successfully invented." (Emphasis added). He also stated that the Chao patent "describes mounting the auxiliary frame over the temples." (Emphasis in original).

Second, Mr. Zelman distinguished the prior art on the ground that in his invention no additional support was required. With respect to the additional support argument, during prosecution Mr. Zelman stated:

- The "possibility of mounting auxiliary frames on conventional eyeglasses with the sole support being provided by mutually attractive magnets . . . is not taught by any of the prior art references."
- "Applicant in his research into the use of magnets to support auxiliary eyeglasses discovered that with properly positioned and oriented magnets . . . they would sufficiently support eyeglasses without any help from other supporting members."
- "The references relied on by the Examiner . . . emphasize repeatedly that magnets alone are insufficient to support auxiliary lenses."
- "They [references cited by the Examiner] repeatedly refer to and describe supporting members in addition to the magnets."
- "The references relied on [by the Examiner] all teach that there must be additional support."
- "[T]hese [prior art] references also teach that magnets have attractive force but they also teach that that magnets alone are not enough to securely support auxiliary eyeglasses and some additional support is needed."

- "[The prior art references] all teach the same thing; that is, that <u>additional support is needed</u>."
- "The references teach magnets attract but also teach that that force is not enough and <u>additional support is needed</u>."
- "Isn't the fact that the [prior art] references teach the <u>necessity for additional support</u> show there would be no motivation to produce applicant's claimed invention?"
- "Chao and several other references clearly teach that there must be <u>some mechanical support</u> in addition to the magnets."
- "[T]he references teach or suggest a contrary <u>construction of mechanical support in addition to the magnets</u>."
- "[T]he entire thrust of the Chao patent is to provide <u>additional support in addition to the magnets</u>."
- "The <u>only support</u> for auxiliary eyeglasses 10 is a <u>mutual attraction of magnets</u> 26 and 30, the magnets are oriented in a direction that provides maximum magnetic attraction in opposition to any dislodging force."
- "The difference between the prior art references and the claims at issue is that the auxiliary glasses are attached underneath the primary glasses. As such the <u>auxiliary glasses are not supported on the primary glasses</u>."
- "Although the Examiner has concluded that the magnetic attractive force is the same above or below the temples, this would not explain or teach why it would have been obvious to one of ordinary skill in the art to mount the extension beneath the temples without any support other than the magnets, particularly when the [Chao] reference repeatedly refers to <u>need for additional support</u> in addition to the magnets."
- "Chao repeatedly indicates that <u>additional support</u> of the auxiliary lens <u>is necessary</u>. Chao describes the <u>disadvantage of using magnets alone</u>."
- "The scope and thrust of the Chao patent is that <u>magnets alone are insufficient</u> to support the auxiliary lenses and additional support is required. Applicant by contrast teaches that <u>no such support is required</u>."

(Emphasis added). Mr. Zelman thus stated no less than seventeen times that in his invention, unlike the prior art, no additional support was needed. Even if the Examiner was only persuaded to allow the '913 patent based on the fact that the prior art had bottom-mounted magnets and was not concerned about the fact that the prior art required additional support, Mr. Zelman repeatedly asserted the prior art required additional support. With these statements, Mr. Zelman clearly disclaimed coverage over a device with additional support. It is irrelevant what the Examiner thought Mr. Zelman was disclaiming. It was Mr. Zelman's own statements that created the

disclaimer.  See Springs Window Fashions LP v. Novo Indus., L.P., 323 F.3d 989, 994-95 (Fed. Cir. 2003); Laitram Corp. v. Morehouse Indus. 143 F.3d 1456, 1462 (Fed. Cir. 1998).

The district court focused on the fact that, during prosecution, Mr. Zelman attempted to add two claims that would have more clearly claimed auxiliary eyeglasses with bottom-mounted magnets held up "solely by the attractive magnetic forces" or "solely by said attractive force."  Those claims were never entered, as the Examiner found they would require additional searching and would not simplify issues for appeal.  The Examiner did not suggest, however, that the proposed claims raised new matter.  While the district court is correct that the claims were later cancelled by Mr. Zelman during prosecution, the claims were not cancelled because Mr. Zelman was abandoning the subject matter, but because the Examiner would not allow them to be entered.

In sum, Mr. Zelman's statements clearly and unmistakably disclaimed coverage of a device with additional support.  Although under this interpretation some of the preferred embodiments will be read out of the '913 patent, this court has recognized that when there is a clear disclaimer during the prosecution history, it may be appropriate to read out the preferred embodiments.  See N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1345 (Fed. Cir. 2005); Rheox, Inc. v. Entact, Inc., 276 F.3d 1319, 1320-27 (Fed. Cir. 2002); Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc., 214 F.3d 1302, 1308 (Fed. Cir. 2000).  This is such a case.

VII.

In sum,

(1)     We hold that, in granting summary judgment in favor of Aspex, the district court erred as a matter of law by misconstruing the claims to cover additional support. Under the correct interpretation, the '913 patent covers auxiliary eyeglasses to be held in place solely by bottom-mounted magnets and <u>without any help from other supporting members</u>.

(2)     Under this interpretation, we hold that genuine issues of material fact exist as to whether the claims are invalid as anticipated by the Takumi frames.[1]

(3)     We consequently <u>vacate</u> the decision of the district court and <u>remand</u> the case for further proceedings on the issue of anticipation, and, if necessary, proceedings on the issues of infringement, validity, and damages.

Each party shall bear its own costs.

---

[1]     We thus reject Aspex's argument that it is entitled to summary judgment even under the claim construction urged by Revolution.