# United States Court of Appeals for the Federal Circuit

2008-1050


REVOLUTION EYEWEAR, INC.,

> Plaintiff/Counterclaim Defendant-Appellee,

and

GARY MARTIN ZELMAN,

> Counterclaim Defendant-Appellee,

v.


ASPEX EYEWEAR, INC. and NONU IFERGAN,

> Defendants/Counterclaimants-Appellants.


R. Joseph Trojan, Trojan Law Offices, of Beverly Hills, California, argued for plaintiff/counterclaim defendant-appellee and counterclaim defendant-appellee. Of counsel was Dylan C. Dang.

Michael A. Nicodema, Greenberg Traurig, LLP, of New York, New York, argued for defendants/counterclaimants-appellants.

Appealed from: United States District Court for the Central District of California

Judge Philip S. Gutierrez

# United States Court of Appeals for the Federal Circuit

2008-1050

REVOLUTION EYEWEAR, INC.,

Plaintiff/Counterclaim Defendant-
Appellee,

and

GARY MARTIN ZELMAN,

Counterclaim Defendant-
Appellee,

v.

ASPEX EYEWEAR, INC. AND NONU IFERGAN,

Defendants/Counterclaimants-
Appellants.

Appeal from the United States District Court for the Central District of California in Case No. 03-CV-05965, Judge Philip S. Gutierrez.

———————————————

DECIDED: February 13, 2009

———————————————

Before NEWMAN, SCHALL and MOORE, Circuit Judges.

NEWMAN, Circuit Judge.

This case relates to a covenant not to sue for past infringement, and its effect on jurisdiction of declaratory counterclaims applicable to future infringement.

In 2003 Revolution Eyewear, Inc. ("Revolution") filed suit against Aspex Eyewear, Inc. and Nonu Ifergan (collectively "Aspex") in the United States District Court for the

Central District of California, charging infringement of United States Patent No. 6,550,913 ("the '913 patent") entitled "Auxiliary Eyewear Attachment Methods and Apparatus." The patented invention relates to magnetically-attached auxiliary eyeglasses. After the suit was filed Aspex discontinued selling the allegedly infringing eyewear. In responding to the complaint Aspex filed counterclaims for non-infringement, invalidity, and unenforceability of the '913 patent.

In the course of pre-trial proceedings, on March 18, 2005 the district court granted Aspex's motion for summary judgment on its counterclaim of invalidity of the '913 patent, dismissed as moot the other Aspex counterclaims for non-infringement and unenforceability, and entered final judgment of invalidity. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. CV 03-5965, 2005 U.S. Dist. LEXIS 42105 (C.D. Cal. Mar. 4, 2005). Revolution appealed, and on March 30, 2006 this court vacated the judgment of invalidity, on the ground that the district court misconstrued the meaning of the claims at issue, and remanded for further proceedings in light of this court's claim construction. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 175 Fed. Appx. 350, 2006 U.S. App. LEXIS 7935 (Fed. Cir. March 30, 2006). Meanwhile, on May 3, 2005 the district court had granted Aspex's motion for attorney fees under 35 U.S.C. §285. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 03-5965 (C.D. Cal. May 3, 2005). Revolution appealed the attorney fee award, and we dismissed the appeal on the ground that there was no final judgment, citing our previous remand. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 05-1510, 2006 U.S. App. LEXIS 11957 (Fed. Cir. May 12, 2006). On remand, the district court held on October 6, 2006 that the issues of unenforceability and invalidity required trial, J.A. 299-307, and set a trial date of September 25, 2007.

On September 6, 2007 Revolution e-mailed to Aspex a covenant not to sue, stating that it would be filed with a motion to dismiss. The covenant was as follows:

Revolution and counter-defendant Gary Zelman hereby unconditionally covenant not to sue Aspex for patent infringement under the '913 patent based upon any activities and/or products made, used, or sold on or before the dismissal of this action (03-5965 case).

On September 7, 2007 Revolution filed the covenant with a motion to dismiss its infringement suit under Fed. R. Civ. P. 41(a)(2), to dismiss Aspex's counterclaims for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), and for absence of the constitutionally required case or controversy. Aspex objected, arguing that an actual controversy continued to exist because Revolution's covenant applied only to past infringement. Aspex's opposition included the declaration of its Vice President Thierry Ifergan, stating that although Aspex had removed the accused products from the marketplace "in an abundance of caution" while investigating the '913 patent, Aspex believes the patent is not infringed and is invalid (as the district court had previously held on summary judgment) and unenforceable. Ifergan declared that "Aspex has the capability to reintroduce the accused bottom-mounted eyewear into the marketplace within a few months, and that "it is Aspex's intention" to do so. (Decl. at 1, filed Sept. 14, 2007).

The district court then dismissed the claims and counterclaims. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., No. 03-5965 (C.D. Cal. Sept. 26, 2007). The court found that Revolution's covenant not to sue and the dismissal of its infringement claims "forever removes the possibility that Aspex may be sued under the '913 patent for Aspex's products made, used, or sold on or before the filing of the motion to dismiss, just as in Super Sack [Manufacturing Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995)]" (emphasis in original). The district court ruled that: "Counter-Defendants have covenanted not to sue

Defendants in the future for products made, used or sold in the past and present, and this is sufficient to remove any actual controversy in the present," and held that the court no longer had subject matter jurisdiction of the counterclaims.

Aspex appeals the dismissal of its counterclaims, stating that the circumstances of this case, along with superseding decisions of the Supreme Court and this court, require a contrary result.

DISCUSSION

It is not disputed that Revolution, Aspex, and the district court all understood that Revolution's covenant does not protect Aspex from suit should Aspex embark on future marketing of its bottom-mounted eyewear products. Aspex states that this fact alone distinguishes the holding in Super Sack, where the covenant not to sue applied to the products as they existed at the time of the suit, even if the products were made and sold in the future. In Super Sack this court deemed it "speculative" as to whether any unknown future products of potentially changed structure would be sufficiently at risk of infringement, to warrant present prosecution of declaratory charges of invalidity. In contrast, Aspex states that it does not intend to change its design, and that the Revolution covenant does not extend to future sales of products of the same structure. We agree that this is a critical distinction from Super Sack, where this court explained that:

> Although Chase may have some cause to fear an infringement suit under the [patents in suit] based on products that it may develop in the future, [it] has no cause for concern that it can be liable for any infringing acts involving products that it made, sold, or used on or before July 8, 1994, the day Super Sack filed its motion to dismiss for lack of an actual controversy.

57 F.3d at 1059. Similarly in Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999), this court held that "an actual controversy cannot be based on a fear of

litigation over future products," referring to potentially modified products that were not yet in existence and that were not included in the charge of infringement in the prior litigation.

Aspex points out that the controlling law is that of <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118 (2007), where the Court held that a declaratory action is available when the facts as alleged "'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" <u>Id.</u> at 127 (<u>quoting</u> <u>Md. Casualty Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)</u>). The Court explained that the Federal Circuit's requirements, specific to patent cases, that there be both a threat or other action by the patentee sufficient to create a reasonable apprehension of infringement suit, and present activity that could constitute infringement or concrete steps taken with the intent to conduct such activity, were more rigorous than warranted by the principle and purpose of declaratory actions. The Court held that all of the circumstances must be considered for each particular case.

The district court discussed the ruling in <u>MedImmune</u>, and remarked that <u>Super Sack</u> had not been overruled to the extent that it established that a covenant not to sue in the future for products made, used, or sold in the past removes actual controversy in the present. The district court observed that the Court in <u>MedImmune</u> "did not change the Federal Circuit's established rule that 'the actual controversy must be extant at all stages of review, not merely at the time the complaint is filed,'" citing <u>Super Sack</u>. We agree that this rule was not changed, and indeed is shared by declaratory actions generally. However, the Court did change the Federal Circuit's rule that there must be either actual infringement or active preparation to infringe accompanied by a reasonable apprehension of imminent suit,

for those circumstances were not present on the facts of <u>MedImmune</u>. Instead, the Court

imposed a totality-of-the-circumstances test for deciding whether there is indeed an actual

controversy, on the particular facts and relationships involved.

Whether a covenant not to sue will divest the trial court of jurisdiction depends on

what is covered by the covenant. This court applied the <u>MedImmune</u> test in <u>SanDisk Corp.</u>

<u>v. STMicroelectronics, Inc.</u>, 480 F.3d 1372 (Fed. Cir. 2007), and held that

> where a patentee asserts rights under a patent based on certain identified
> ongoing or planned activity of another party, and where the party contends
> that it has the right to engage in the accused activity without a license, an
> Article III case or controversy will arise and the party need not risk a suit for
> infringement by engaging in the identified activity before seeking a declaration
> of its legal rights.

<u>Id.</u> at 1381. <u>SanDisk</u> illustrates the changed standard after <u>MedImmune</u>, for in <u>SanDisk</u> the

court held that a statement by STMicroelectronics' vice president Lisa Jorgenson that it

would not sue SanDisk for infringement as to particular products did not divest the court of

declaratory judgment jurisdiction

> because ST has engaged in a course of conduct that shows a preparedness
> and willingness to enforce its patent rights despite Jorgenson's statement.
> Having approached SanDisk, having made a studied and considered
> determination of infringement by SanDisk, having communicated that
> determination to SanDisk, and then saying that it does not intend to sue, ST is
> engaging in the kinds of "extra-judicial patent enforcement with scare-the-
> customer-and-run tactics" that the Declaratory Judgment Act was intended to
> obviate.

<u>Id.</u> at 1383 (<u>quoting</u> <u>Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.</u>, 846 F.2d 731, 735

(Fed. Cir. 1988)). This court explained that declaratory judgment jurisdiction is met when

the patentee "puts the declaratory judgment plaintiff in the position of either pursuing

arguably illegal behavior or abandoning that which he claims a right to do." <u>Id.</u> at 1381.

Although a mere interest in marketing a product patented to another, without more, does not

not create a "definite and concrete" legal conflict, the entirety of the relationship must be considered. On these facts, where the party's proposed activity resulted in an assertion of legal rights by the patentee, the court held that it was not necessary for the party actually to infringe before seeking a declaration of rights.

The principles of MedImmune were again applied in Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340 (Fed. Cir. 2007), but to contrary result. The patentee Benitec filed a covenant not to sue for infringement based on a pharmaceutical product that Nucleonics was developing but for which it had not yet obtained or applied for federal approval. Nucleonics stated that it wished to continue to challenge the Benitec patents, to "clear the way" in the event that it later obtained federal approval of the potentially infringing product. The district court observed that Nucleonics was exempt from liability for infringement that arose out of its testing and research by virtue of the Hatch-Waxman Act, and further observed that Nucleonics did not expect to file a New Drug Application (see 21 USC §355) before "at least 2010-2012, if ever," thus removing "immediacy and reality" from the declaratory action. Id. at 1432. This court agreed, and held that on the entirety of the circumstances there was not an actual controversy, for "[t]he residual possibility of a future infringement suit based on [ ] future acts is simply too speculative." Id. at 1346 (quoting Super Sack, 57 F.3d at 1060) (alteration in original).

Revolution argues that its covenant is identical to the one in Benitec and that the same outcome should obtain. However, that characterization of Revolution's covenant is inaccurate. In Benitec, as in Super Sack, the continuing activities were not subject to an infringement suit, either because of a covenant that extended to future production and sale of the same products that were the subject of the infringement suit, see 57 F.3d at 1057

(Super Sack's promise not to sue extended to "bulk bags previously or currently manufactured or sold by Chase"), or in <u>Benitec</u> because of a statutory exemption, <u>see</u> 495 F.3d at 1346 (exemption under the Hatch-Waxman Act, 35 U.S.C. §271(e)(1)).  Thus, in each case, there was not a reasonable apprehension of suit.  In contrast, Revolution's covenant did not extend to future sales of the same product as was previously sold.

Although the factual situation faced by Aspex may not be as vivid as was hypothesized by the Court in <u>MedImmune</u>, "[t]he rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business, before seeking a declaration of its actively contested legal rights finds no support in Article III."  <u>MedImmune</u>, 549 U.S. at 134.  The court must apply the principles and purpose of the declaratory action, to determine whether there is a sufficient actual controversy to warrant judicial resolution.  Revolution's proposition that for a justiciable controversy to exist, Aspex must reinstitute manufacture and sale of the accused bottom-mounted magnetic eyewear before it can test the patent, and risk being held a willful infringer subject to treble damages if the test fails, raises a question for which <u>MedImmune</u> counsels thoughtful review of the entirety of the circumstances.

Aspex maintains that it has the right to make and sell the disputed eyewear products because the '913 patent is invalid or unenforceable.  The planned activity is not speculative.  Indeed, it appears that Aspex already has in storage a quantity of the product that it sold before and wishes to sell again.  In turn, Revolution states that it will return to court if Aspex reenters this market with these products.  Oral Arg. at 13:50, <u>available at</u> http://oralarguments.cafc.uscourts.gov/mp3/2008-1050.mp3.  The dispute is "definite and concrete," for it pertains to the '913 patent as applied to the specific merchandise that was

previously produced and sold by Aspex and that Aspex wishes to reintroduce to the market. The dispute is "real and substantial," as evidenced by the lengthy litigation and the limited covenant. The issue "touch[es] the legal relations of parties having adverse legal interests," for it affects whether Aspex can return to this market without risking treble damages should the challenge eventually fail, and the dispute is amenable to "specific relief through a decree of a conclusive character" because the resolution of the counterclaims for validity and enforceability of the '913 patent will conclusively determine the issue. The case thus satisfies the requirements stated in MedImmune.

This case is of larger substance than merely a would-be competitor seeking to test the waters by way of an advisory judicial opinion on an adverse patent, as Revolution suggests. These parties are already in infringement litigation initiated by the patentee, the case has been pending since 2003, and already has produced a summary judgment of invalidity (which was later vacated by this court, 175 Fed. Appx. 350); the patentee filed its covenant in 2007, after four years of litigation, on the eve of trial of the question of enforceability. Throughout this period the accused eyewear were removed from the market by Aspex, and would not be shielded by the covenant should it be returned to the market, as Aspex states is its intention. Aspex states, and Revolution agreed at the argument of this appeal, that it is reasonable to believe that Revolution will again file suit should Aspex return to this market with the same product as it previously sold. By now barring the counterclaims that have been pending since 2003, Aspex states that this court would enable the "scare-the-customer-and-run" tactics that were deplored in Arrowhead, supra. Thus, Aspex's declaratory action is not a request for an "advisory opinion" sought by a would-be future competitor; it meets the MedImmune requirement of "sufficient immediacy and reality," 549

and reality," 549 U.S. at 127, when the entirety of the circumstances are considered.

The district court cases cited by Revolution are not to the contrary, and generally support the conclusion reached herein. Thus, in True Center Gate Leasing, Inc. v. Sonoran Gate, L.L.C., 402 F. Supp. 2d 1093 (D. Ariz. 2005), the district court found no jurisdiction because the covenant not to sue extended to all products in existence on the day of the covenant, even if such products were produced and sold afterwards. Similarly, in Samsung Electronics Co. v. Rambus, Inc., 398 F. Supp. 2d 470, 474 (E.D. Va. 2005), the district court found no jurisdiction because the covenant not to sue covered "any and all methods, processes, and products made, used, offered for sale, sold, or imported by Samsung currently or at any time prior to the date of this covenant," which the district court concluded covered future acts involving the existing products. Id. In In re Columbia University Patent Litigation, 343 F. Supp. 2d 35, 41 (D. Mass 2005), the covenant not to sue covered

> any and all methods, processes, and products made, used, offered for sale, sold, or imported by any plaintiff at any time . . . [and] all claims in the 275 patent as they currently read, and any claim in any reissued or reexamined version of the 275 patent that is the same as, or substantially identical to, any claim of the 275 patent as it currently reads.

In Level 1 Technologies, Inc. v. C.R. Bard, Inc., 839 F. Supp. 90, 91-92 (D. Mass. 1994), the district court dismissed the complaint based on a covenant not to sue "for the making, using, or selling of any existing Level 1 product based on that patent," the court stating that "[f]uture, theoretical possibilities of infringement are insufficient grounds for jurisdiction." In CIVCO Medical Instruments Co. v. Protek Medical Prods., 231 F.R.D. 555, 557 n.2 (S.D. Iowa 2005), the patentee covenanted not to sue "for infringement as to any claims of the '889 and '499 patents based upon Protek's DirectorTM needle guide in its current form." A post-MedImmune district court case is Crossbow Technology, Inc. v. YH Technology, 531 F.

F. Supp. 2d 1117, 1122 (N.D. Cal. 2007), where the covenant not to sue extended to "manufacture, development, design, marketing, licensing, distributing, offering for sale, or selling the Crossbow Technology IMU-400, KVH Industries RA2030, KVH Industries RD2030, YH 5000/5100 IMU, YH-7000 IMU, and YH-8000 as they exist today or have existed in the past."

In all of these cases, the covenants covered the current products whether they were produced and sold before or after the covenant, and the courts found absence of continuing case or controversy. In contrast, Revolution offered no covenant on the current products, stating that it is not obligated to "repudiate suit for future infringement." Br. at 24. We agree that such is its right. However, by retaining that right, Revolution preserved this controversy at a level of "sufficient immediacy and reality" to allow Aspex to pursue its declaratory judgment counterclaims.

On these facts and with the guidance of MedImmune as to applicable principles and policy, we conclude that there is an actual controversy within the meaning of the Declaratory Judgment Act. The district court erred in holding that Revolution's covenant not to sue for past infringement ousted the court of jurisdiction of Aspex's counterclaims, in the circumstances of this case. Accordingly, the dismissal is reversed, and the case is remanded for further proceedings.

REVERSED AND REMANDED