**HARRIS CORPORATION, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION,
Defendant.**

**Case No. 6:07–cv–1819–Orl–28KRS.**

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 26, 2009.

there is no longer a justiciable controversy with regard to the unasserted patents. Under the circumstances of this case, subject matter jurisdiction survives and the motion to dismiss must be denied.

Brian R. Gilchrist, Ryan Thomas Santurri, Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA, Orlando, FL, for Plaintiff.

Charley F. Brown, J. Scott Anderson, Jeffrey H. Brickman, Lawrence K. Nodine, Robin L. Gentry, Sumner C. Rosenberg, Ballard, Spahr, Andrews & Ingersoll, LLP, Atlanta, GA, Marilyn G. Moran, Baker & Hostetler, LLP, Orlando, FL, for Defendant.

### ORDER

JOHN ANTOON, II, District Judge.

In this patent infringement suit, Plaintiff has filed a motion to dismiss certain of Defendant's counterclaims for declaratory judgment of non-infringement, invalidity, and unenforceability. The challenged counterclaims are directed to patents asserted in the original Complaint but not reasserted in the pending Amended Complaint. Plaintiff has also filed a qualified Covenant Not to Sue Defendant for infringement of these now unasserted patents. The issue before the Court is whether deletion of the claims of infringement from the Amended Complaint and the Covenant Not to Sue have divested this Court of subject matter jurisdiction because

### BACKGROUND

On November 16, 2007, Plaintiff Harris Corporation ("Harris") filed the instant suit, alleging that Defendant Federal Express ("FedEx") had infringed eight of its patents[1] relating to wireless communication technologies used on FedEx's Boeing 727 aircraft. (Doc. 1). On February 1, 2008, FedEx filed its Answer and counterclaims seeking declaratory judgments that: 1) FedEx was not infringing the asserted patents; and 2) that the asserted patents were invalid. (Doc. 10 at 6–7). In its prayer for relief, FedEx also requested an award of attorneys' fees pursuant to 35 U.S.C. § 285. (*Id.* at 11). In April 2008, Harris filed an Amended Complaint (Doc. 32), in which Harris added two additional patents that it claimed FedEx also infringed.[2] On March 27, 2009, after conducting extensive discovery, Harris filed a Second Amended Complaint (Doc. 75) in which Harris added three newly-issued patents[3] and removed five patents listed in the two prior complaints. In the motion to dismiss the counterclaims and the response thereto, both parties refer to these five patents (044, '159, '523, '545, and '636) as the "Unasserted Patents." (*See* Docs. 81 & 84). Harris claims that it decided to remove the Unasserted Patents to avoid jury confusion at trial and to focus on the pat-

---

1. The patent numbers listed in the original Complaint were: 6,104,914 ("the '914 patent"); 6,108,523 ("the '523 patent"); 6,154,-636 ("the '636 patent"); 6,154,637 ("the '637 patent"); 6,173,159B1 ("the '159 patent"); 6,308,044B1 ("the 044 patent"); 6,775,545B2 ("the '545 patent"); 6,990,319B2 ("the '319 patent"). (Doc. 1 at 2–3).

2. Harris added patent numbers 6,047,165 ("the '165 patent") and 6,308,045 ("the '045 patent") in the Amended Complaint. (Doc. 32 at 3).

3. Patent numbers 7,426,387 ("the '387 patent"); 7,428,412 ("the '412 patent"); and 7,444,146 ("the '146 patent"). (Doc. 75 at 3).

ents "where infringement is more straightforward." (Doc. 81 at 3). FedEx offered to permit Harris to dismiss the Unasserted Patents with prejudice or stipulate to non infringement of these patents, but Harris refused. (Doc. 84 at 18).

On April 13, 2009, FedEx filed its Answer to the Second Amended Complaint (Doc. 77), which included fifteen counterclaims seeking declaratory judgments of non-infringement, invalidity, and unenforceability due to inequitable conduct pursuant to 28 U.S.C. § 2201. Count One seeks declaratory judgment that FedEx did not infringe any of Harris's thirteen patents, the eight listed in the Second Amended Complaint plus the five Unasserted Patents. (*id.* at 8). Count Two seeks a declaratory judgment that all thirteen patents are invalid. (*Id.* at 11). Counts Eight through Twelve lists the Unasserted Patents individually and requests declarations from the Court that each of the Unasserted Patents is unenforceable due to Harris's inequitable conduct, namely, that Harris breached its duty of candor and failed to disclose material prior art references to the United States Patent and Trademark Office ("USPTO") during the prosecution of its patent applications. (*Id.* at 32–42).

On April 21, 2009, Harris filed its Motion to Dismiss FedEx's Counterclaims 1, 2 and 8–12 (Doc. 81), claiming that this Court lacked subject matter jurisdiction over the Unasserted Patents because they were no longer in controversy.[4] Subsequently, on April 30, 2009, Harris issued a qualified Covenant Not to Sue FedEx for infringement of the Unasserted Patents ("the Covenant"), signed by Brian P. Holt, Harris Corporation's Director of IP Licensing. (Covenant, attached as Ex. A to Doc. 90). The Covenant provides:

> HARRIS CORPORATION, the owner of U.S. Patent Nos. 6,108,523; 6,775,545; 6,154,636; 6,308,044; and 6,173,159 ("the unasserted patents"), hereby covenants not to sue FEDERAL EXPRESS for infringement of the claims of the unasserted patents for the ground data link systems installed or previously installed on Boeing 727 aircraft of Federal Express as specifically described by Federal Express' corporate representatives Robert Swanson and Derek R. Wickens in sworn testimony in this case.
>
> Provided, however, nothing in this Covenant shall be construed so as to encompass any other ground data link system. This Covenant is limited to the as-installed system on FedEx's Boeing 727 aircraft and shall not include future systems, modified systems, systems installed on aircraft other than FedEx's 727 aircraft, or systems installed differently than how Federal Express has testified the system is or was installed. No other Harris patents are included in this Covenant.

(*Id.*). Harris insists that the Covenant eliminates any controversy with respect to the Unasserted Patents, rendering FedEx's counterclaims moot and divesting the Court of subject matter jurisdiction. FedEx argues in its Memorandum in Opposition to the Motion (Doc. 84) that there is still a sufficiently concrete dispute over the Unasserted Patents to allow the Court to retain jurisdiction over FedEx's counterclaims. At FedEx's request, the Court held oral arguments limited to the issue of the effectiveness of the Covenant.

---

4. Harris noted in its Motion that it would not oppose leave to allow FedEx to amend its answer and replead its counterclaims to include only the eight asserted patents. (Doc. 81 at 5).

## DISCUSSION

### I. Legal Standards

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), under which FedEx brings its counterclaims, provides, in relevant part: "In a case of *actual controversy* within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Consequently, "[d]eclaratory judgment jurisdiction pursuant to 28 U.S.C. § 2201[ ] must be predicated on the existence of a case or controversy between the parties." *Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1398 (Fed.Cir.1984) (footnote omitted).

Until recently, whether a declaratory judgment action met the Article III controversy requirement was determined using a "reasonable-apprehension-of-suit test [that] require[s] 'both (1) an explicit threat or action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such an activity.'" *Caraco Pharm. Labs. Ltd. v. Forest Labs., Inc.,* 527 F.3d 1278, 1290–91 (Fed.Cir.2008) (quoting *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.,* 482 F.3d 1330, 1339 (Fed.Cir.2007)). However, in *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), the Supreme Court concluded that to constitute a justiciable controversy, a dispute in a declaratory judgment action had to be " 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " (*Id.* at 127, 127 S.Ct. 764) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. 240–41 (1937)). The Court also held that whether a controversy exists is to be decided in light of "all the circumstances." *Id.* Subsequent cases from the Federal Circuit have recognized that the Court's opinion in *MedImmune* constitutes a rejection of the more limited apprehension-of-suit test. *See SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1380 (Fed.Cir.2007); *Teva,* 482 F.3d at 1339.

For jurisdictional purposes in declaratory actions, "the actual controversy must be extant at all stages of review, not merely at the time the complaint is filed," and the burden is on counterclaimant to "establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed." *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed.Cir.1995) (alteration in original) (internal quotations omitted). "If ... a party has actually been charged with infringement of the patent, there is, *necessarily,* a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the [Declaratory Judgment] Act." *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). Accordingly, at the time FedEx originally filed its counterclaims with respect to the Unasserted Patents which were then being asserted against FedEx, the Court had jurisdiction over the counterclaims. Furthermore, "while the initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once that burden has been met courts are entitled to presume, *absent fur-*

*ther information,* that jurisdiction continues." *Id.* at 98, 113 S.Ct. 1967 (emphasis added). Therefore, the Court retains jurisdiction over the counterclaims unless intervening conduct negates that jurisdiction.

The Federal Circuit recognizes that "a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts."[5] *Super Sack,* 57 F.3d at 1058; *see also MedImmune, Inc. v. Genentech, Inc.,* 535 F.Supp.2d 1000, 1005 (C.D.Cal.2008) [hereinafter *MedImmune II*] ("Under Federal Circuit precedent, a properly executed covenant not to sue for infringement not only moots the controversy with respect to infringement, but it also eliminates subject matter jurisdiction with respect to remaining declaratory claims for patent invalidity and unenforceability." (citations omitted)). Consequently, the key issue in determin-

ing if the Court retains jurisdiction over FedEx's counterclaims is whether Harris's Covenant was both "properly executed" and sufficiently broad to eliminate the controversy with respect to the Unasserted Patents.

### II. Failure to divest jurisdiction in light of "all the circumstances"

█ As a threshold matter, Harris's Covenant was timely-filed and in the proper form to constitute a valid, binding promise, capable of mooting FedEx's counterclaims. Nonetheless, the Covenant fails to eliminate the controversy over the Unasserted Patents for three reasons. First, pursuant to Federal Circuit precedent, the Covenant cannot divest the Court of jurisdiction over FedEx's counterclaims of unenforceability and inequitable conduct. Second, the qualified Covenant is insufficiently broad to preclude the prospect of future litigation over FedEx's past and present uses of the system in question. Finally, both the Unasserted Patents and

---

**5.** Other courts have lamented the potential unfairness of this procedure. *See, e.g., Benitec Australia, Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1351, 1353 (Fed.Cir.2007) (describing the "patentee's manipulative efforts to defeat declaratory jurisdiction" (Dyk, J., dissenting)); *Dow Jones Co. v. Ablaise Ltd.,* 583 F.Supp.2d 41, 44 (D.D.C.2008) (comparing the patentee's issuance of a covenant not to sue to "Lucy ... snatching the football away from Charlie Brown"); *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.,* 528 F.Supp.2d 654, 674 (E.D.Mich.2007) ("[I]t is difficult to view [the patentee's] tactics in this case as anything other than an eleventh-hour attempt to pull the jurisdictional rug out from under a counterclaim that it could not defend on the merits."). Indeed, "it may seem unfair to allow a patentee to first proceed with its infringement claim and then, if the result is not favorable, eliminate the court's jurisdiction over the accused infringer's counterclaim by covenanting not to sue the accused infringer. Fairness is not part of the jurisdictional inquiry, however." *Fort James Corp. v. Solo*

*Cup Co.,* 412 F.3d 1340, 1354–55 (Schall, J., dissenting).

Permitting a patent to avoid counterclaims by filing a covenant not to sue also raises policy questions. *See Cardinal,* 508 U.S. at 100, 113 S.Ct. 1967 (emphasizing "the importance to the public at large of resolving questions of patent validity"); *see also Dow Jones,* 583 F.Supp.2d at 44 ("There is an important public interest in protecting the legal system against manipulation by parties, especially those prone to involvement in repeat litigation, who might contrive to moot cases that otherwise would be likely to produce unfavorable precedents.'" (quoting Hart & Weschler, *The Federal Courts and the Federal System* 204 (5th ed. 2003))). These equitable and policy considerations, however, are not part of the Court's jurisdictional analysis, and the Court accepts the well-settled Federal Circuit precedent that, under the proper circumstances, a covenant not to sue can divest a district court of jurisdiction over patent-based counterclaims.

the patents-in-suit relate to the same communications system and the questions of law and fact will overlap to a substantial degree. Accordingly, using *MedImmune*'s holistic approach of considering "all the circumstances" in evaluating declaratory judgment jurisdiction, the Court finds that a sufficient controversy exists with respect to the Unasserted Patents to permit the Court to retain jurisdiction over FedEx's counterclaims.

### A. The Covenant was "properly executed" in its timing and form

#### 1. Timing of the Covenant

FedEx claims that the Covenant should not be given effect because it is not timely, insisting that "it is far too late in the day for Harris to unilaterally drop the Unasserted Patents." (Doc. 84 at 17). Case law from the Federal Circuit, however, suggests that a valid covenant not to sue can moot an invalidity counterclaim so long as it is filed anytime before a judicial determination of non-infringement. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed.Cir.2007) (determining that even though the patentee "acknowledged lack of infringement ... when it moved to dismiss its infringement claims," absent an adjudication on the issue of infringement, the covenant not to sue removed the controversy over defendant's counterclaims); *Super Sack*, 57 F.3d at 1059 (holding a covenant not to sue, filed after more than five years and a full discovery phase—but before any determination by the court on the issue of infringement—"remove[d] from the field any controversy sufficiently actual to confer jurisdiction" over defendant's declaratory judgment counterclaims); *MedImmune II*, 535 F.Supp.2d at 1006 (noting that, with respect to the timing of a covenant, "the only factor that matters under the Federal Circuit's apparent bright line rule is

whether a ruling on noninfringement has been reached").

Conversely, in cases in which covenants have been filed *after* a ruling on the issue of infringement, the Federal Circuit has determined that the covenants are not sufficient to remove the controversy over counterclaims. For example, in *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348 (Fed.Cir.2005), the Federal Circuit held that a covenant not to sue did not divest the district court of jurisdiction over defendant's counterclaims of invalidity when the covenant was issued after a jury verdict of non-infringement on one of three patents at issue. The court distinguished the case from prior examples where the covenants had come prior to a finding of non infringement:

> In *Super Sack* and its progeny, the patentee's covenant not to sue was filed prior to consideration or resolution of the underlying infringement claim. In such circumstances, the promise not to sue obviated any reasonable apprehension that the declaratory judgment plaintiff might have of being held liable for its acts of infringement. Here, however, the Post–Verdict Covenant had no effect on [the patentee's] claim for infringement, because that controversy had already been resolved by the jury's verdict.

*Id.* (citations omitted). In the instant case, of course, Harris removed the Unasserted Patents from its Second Amended Complaint and filed its Covenant prior to any judicial finding of non-infringement. Accordingly, the Covenant is timely.

#### 2. Form of the Covenant

Harris's Covenant, filed as an exhibit to its Reply to FedEx's Memorandum, is sufficient to constitute a valid promise. In similar cases, the Federal Circuit has found some covenants insufficient to allevi-

ate concerns about future infringement suits. For example, in *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382–83 (Fed.Cir.2007), the court found a verbal assurance from the patentee's vice president of intellectual property and licensing that the patentee had "no plan whatsoever to sue" did not remove the controversy when the patentee had subsequently "engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite [the] statement."

On the other hand, the Federal Circuit has recognized that promises even less straightforward than Harris's Covenant are enforceable and can be sufficient to moot invalidity counterclaims. In *Super Sack*, the Federal Circuit found that the patentee's covenant not to sue, which was merely inserted into a brief by the patentee's counsel, was enough to estop the patentee from later bringing an infringement suit.[6] 57 F.3d at 1059. The court found that even "a statement of counsel in motion papers and briefs, rather than a covenant signed by [the patentee] itself and filed with the court" was sufficient to constitute a binding promise. *Id.* Similarly, in *Benitec*, the court found the following sentence sufficient to moot an invalidity counterclaim when inserted into the patentee's appellate brief: "[The patentee] covenants and promises not to sue [ ] for patent infringement arising from activities and/or products occurring on or before the date dismissal was entered in this action...." 495 F.3d at 1343.

Filed as a separate exhibit and signed by Harris's Director of IP Licensing, Har-

ris's Covenant is more direct than the covenants found in *Super Sack* or *Benitec*, which the Federal Circuit held to be binding. Under these precedents, Harris's Covenant is in the proper form to constitute an enforceable promise.

## B. The Covenant does not moot issues of inequitable conduct

While the Covenant is timely and in the proper form to constitute a valid, binding promise, it fails to moot the controversy with respect to the Unasserted Patents. First, even if the Covenant covered FedEx's invalidity and non-infringement counterclaims, it has no effect on Counterclaims 8–12, those based on unenforceability due to inequitable conduct. (Doc. 96 at 5). In support of this proposition, FedEx cites *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242 (Fed.Cir.2008), in which the Federal Circuit found that jurisdiction over a request for attorney fees prevents a covenant not to sue from stripping a district court of jurisdiction over counterclaims of inequitable conduct. The *Monsanto* court began by noting that while filing a covenant not to sue "may divest the court of jurisdiction over a declaratory judgment action ... the district court retain[s] independent jurisdiction over [a counterclaimant's] request for attorney fees under 35 U.S.C. § 285." *Id.* The Federal Circuit further recognized that determining the question of attorney's fees includes jurisdiction to inquire about inequitable conduct and that a finding of inequitable conduct automatically renders a patent unenforceable. *Id.* at 1242–43. That Court reasoned, therefore, that "a district court's jurisdiction under § 285 to

---

**6.** Super Sack's "covenant" consisted of the following paragraph:

Super Sack has previously offered to dismiss its claims of infringement if Chase would dismiss its Declaratory Judgment Counterclaims. Super Sack will now go

one step further. *Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase.*

57 F.3d at 1056 (emphasis in original).

determine whether there was inequitable conduct in the prosecution of patents that are otherwise no longer in suit confers on that court the jurisdiction to hold such patents unenforceable for inequitable conduct." *Id.* at 1243.

In the instant case, FedEx has maintained its request for attorney fees pursuant to 35 U.S.C. § 285 from its initial Answer onward.[7] (*See* Docs. 10 at 4; 34 at 31; 77 at 51). Accordingly, pursuant to *Monsanto,* the Court retains jurisdiction to consider the issue of inequitable conduct for purposes of awarding attorney's fees, which, if found, would necessarily give the Court jurisdiction to render the Unasserted Patents unenforceable. At a minimum, therefore, the Covenant fails to divest the Court of jurisdiction over FedEx's Counterclaims 8–12 as far as they relate to inequitable conduct and unenforceability.

### C. The Covenant does not preclude the prospect of future litigation

FedEx further claims that a "real and substantial controversy" still exists with respect to the Unasserted Patents because "the risk of future suit is not totally alleviated by Harris's covenant not to sue." (Doc. 84 at 19). In order to moot FedEx's counterclaims, the Covenant must eliminate the possibility of future infringement suits regarding alleged past infringement of the Unasserted Patents. Harris's qualified promise is too narrow to accomplish this goal.

The Federal Circuit has recognized that "[w]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* 556 F.3d 1294, 1297 (Fed.Cir.2009). In order to moot a defendant's counterclaims, Federal Circuit case law makes clear that a covenant does not have to cover future acts because "[t]he residual possibility of a future infringement suit based on [the defendant's] future acts is simply too speculative a basis for jurisdiction over [the defendant's] counterclaim for declaratory judgments of invalidity." *Super Sack,* 57 F.3d at 1060; *see also Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed.Cir.1999) (holding that "an actual controversy cannot be based on a fear of litigation over future products"). However, while a covenant "need not cover potentially infringing activities in the future," it must be sufficiently broad to cover "the past and present activities that constitute the 'actual controversy' between the parties." *MedImmune II,* 535 F.Supp.2d at 1005.

In *Super Sack,* the Federal Circuit determined that "although [the defendant] may have some cause for fear of an infringement suit ... based on products that it may develop in the future, [the defendant] has no cause for concern that it can be held liable for any infringing acts involving products it made, sold, or used" prior to the filing of the covenant. 57 F.3d at 1059. The court found that because the covenant shielded the defendant from suits based on products it "currently manufactured and sold," it was sufficient to eliminate the controversy in question. *Id.* at

---

**7.** In *Monsanto,* the court found that the "[i]nequitable conduct regarding the three withdrawn patents was relevant to the question of attorney's fees because Monsanto's request for attorney's fees included fees accumulated before the three patents had been withdrawn." *Id.* at 1242 n. 17. The Court is presented with precisely the same scenario in the instant case, since FedEx included a claim for attorney fees in its Answer to the initial Complaint. (*See* Doc. 10 at 11). Necessarily, then, the fees requested—at least in part—include costs that FedEx incurred prior to Harris's withdrawal of its claims relating to the Unasserted Patents.

1059–60. Similarly, in *Benitec*, the court affirmed the sufficiency of the covenant in which the plaintiff agreed not to sue "for patent infringement arising from activities and/or products occurring on or before the date" of dismissal. 495 F.3d at 1343.[8]

The most recent Federal Circuit case to discuss the scope of covenants was *Revolution Eyewear*, in which the court was presented with a covenant not to sue "based upon any activities and/or products made, used, or sold on or before the dismissal of this action." 556 F.3d at 1296. Surveying prior cases where covenants had been sufficient to remove jurisdiction over counterclaims, the Federal Circuit concluded that "[i]n all of these cases, the covenants covered the current products whether they were produced and sold before or after the covenant...." *Id.* at 1300. The court concluded that because the plaintiff "offered no covenant on the *current* products" and retained the right to sue for future infringement with these products, the plaintiff "preserved this controversy at a level of sufficient immediacy and reality' to allow [the defendant] to pursue its declaratory judgment counterclaims." (Emphasis added). *Id.*

FedEx has the "burden of showing that it is engaged in any *present* activity that could subject it to a claim of infringement." *Benitec*, 495 F.3d at 1348 (emphasis added). Using this standard, the most problematic provision of the Covenant is the fact that it does not extend to "systems installed differently than how FedEx has testified the system is or was installed," limited specifically to the descriptions given "by FedEx' corporate representatives Robert Swanson and Derek R. Wickens in sworn testimony in this case." (Covenant, attached as Ex. A to Doc. 90). At oral arguments, Harris insisted that this limitation stemmed from the fact that there were conflicting descriptions of the systems in question. Irrespective of the rationale behind the wording, however, this language makes the Covenant decidedly more restrictive than covenants found in other, similar cases.

As FedEx notes, the descriptions contained within the depositions are almost certainly incomplete, as describing the system was not the main point of the questioning. Because the Covenant applies only to the systems as they were described by two of FedEx's witnesses, the Covenant leaves open the possibility that Harris could bring an action based on past or present actions that were simply not covered in the depositions. Put another way, FedEx could still be sued for infringement of the Unasserted Patents for the *exact same behavior* it has been and is currently engaged in. Harris's Covenant is more limited than the covenants found in *Super Sack* and its progeny, and this Court is unable to find case law upholding the sufficiency of this type of restricted covenant to moot counterclaims. Consequently, Harris's Covenant is insufficiently broad to eliminate the controversy with respect to the Unasserted Patents, preserving the Court's jurisdiction over FedEx's counterclaims.[9]

---

8. In *Benitec*, the possibility of an infringement suit for the defendant's ongoing activities was completely foreclosed by an intervening Supreme Court decision broadening the 35 U.S.C. § 271(e)(1) pharmaceutical research exception. *Id.* at 1342–43.

9. Harris also qualified its promise by indicating that the Covenant "shall not include fu-

ture systems, modified systems, [or] systems installed on aircraft other than FedEx's 727 aircraft." (Covenant, at 2). However, taken by itself, the possibility that FedEx might be sued based on the development of future systems or subsequent modifications is too speculative to constitute a valid controversy. *See Super Sack*, 57 F.3d at 1060.

### D. The Unasserted Patents are substantially similar to the patents-in-suit

Citing two post-*MedImmune* district court decisions, *FedEx* insists that "a covenant not to sue does not divest a court of subject matter jurisdiction over counterclaims concerning 'dropped patents' *that are related to patents still asserted in the suit.*" (Doc. 96 at 4) (emphasis added). In *Dow Jones Co. v. Ablaise Ltd.*, 583 F.Supp.2d 41, 42 (D.D.C.2008), the court found a patentee's covenant not to sue insufficient to remove the controversy where one of two related patents had been withdrawn after a lengthy discovery period but prior to trial. Drawing an analogy to supplemental jurisdiction under 28 U.S.C. 1367(a), the court recognized that the relationship between the two patents was "so close that the validity or invalidity of one may be said to form part of the same case or controversy of the other." *Id.* at 44. (internal quotations omitted). The court further found that there were "sound prudential reasons" for retaining jurisdiction over the unasserted patent counterclaims, including "the efficient utilization of the litigation resources of both bench and bar." *Id.*

Likewise, in *Tesco Corp. v. Weatherford Int'l, Inc.*, No. H–08–2531, 2009 WL 497134 (S.D.Tex. Feb. 26, 2009), the district court was faced with counterclaims of two similar patents, one of which the patentee had issued a promise not to sue. After discussing *Benitec* and recognizing that a covenant not to sue often removes jurisdiction over counterclaims, the court, nonetheless, determined that "the similarity of the two patents compels the result that the court should retain jurisdiction over the declaratory judgment action for the [unasserted patent]." at *5. Noting the "liberalization of the declaratory judgment standard under *MedImmune*," *id.*, the court followed *Dow Jones*, citing that case

for the proposition that "declaratory judgment act jurisdiction [remains] if the covenant not to sue for infringement is offered ... only after the parties have invested significant resources in discovery, *and the patents are closely related*," *id.* at *4 (emphasis added).

In the instant case, the Unasserted Patents are substantially related to the remaining patents-in-suit. FedEx notes that at least two of the Unasserted Patents, numbers '545 and '523, are particularly tied to the patents-in-suit, as they are part of the same patent "family." (Doc. 96 at 3–4). Indeed, the '545 patent covers a "Wireless Ground Link–Based Aircraft Data Communications System with Roaming Feature," (Doc. 1 at 3) a title shared by five of the eight patents listed in the Second Amended Complaint. (Doc. 75 at 3). Moreover, all of the Unasserted Patents relate to the same general communications system, and, consequently, " 'common issues of fact and law in this case are overwhelming.' " (Doc. 96 at 5 (quoting Doc. 49 at 3)). Standing alone, the similarity of the patents would likely not be enough to sustain a justiciable controversy. However, the Court recognizes that, under *MedImmune*'s holistic approach, the relation between the Unasserted Patents and the patents-in-suit is an additional factor that weighs in favor of retaining jurisdiction over FedEx's counterclaims.

### CONCLUSION

Viewed in light of "all the circumstances," Harris's Covenant is insufficient to remove the controversy with respect to the Unasserted Patents and divest the Court of jurisdiction over FedEx's counterclaims. Accordingly, Plaintiffs Motion to Dismiss Counterclaims 1, 2, 8–12 (Doc. 81) is **DENIED**.